Nicholas **SPEROS**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 537–82C.

United States Claims Court.

June 28, 1985.

Peter B. Broida, Washington, D.C., attorney of record, for plaintiff. Passman & Broida, Washington, D.C., of counsel.

Michael A. Gordon, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff, formerly assistant principal in the Wiesbaden, Germany Middle School of the United States Department of Defense Dependents Schools (DODDS), sues to set aside his removal from that position and to recover back pay and attorneys' fees. The court, having considered the parties' briefs and having heard oral argument, has concluded that plaintiff is not entitled to the relief he seeks.

### I.

By letter of May 3, 1978, plaintiff was notified that the superintendent of the school district in which he was employed, Herman D. Search, proposed to remove him based upon charges that he had submitted

claims for living allowances to which he was not entitled. In all, six separate instances of false claims, alleged to have been submitted between July, 1971 and August, 1973, were cited. Plaintiff was afforded the opportunity to reply to the charges, both orally and in writing. He was assisted by counsel throughout the reply and subsequent appeal.

The agency official charged with evaluating both the evidence supporting the charges and plaintiff's reply, Dr. Anthony Cardinale, Director, Department of Defense Dependents Schools, concluded that the charges were sustained and that plaintiff's removal was warranted. Plaintiff appealed the removal decision to the Federal Employee Appeals Authority (FEAA) of the Civil Service Commission.[1] The FEAA conducted a hearing on November 5, 6, and 7, 1979. On May 8, 1980, the appeals officer issued her decision affirming the agency's decision to remove plaintiff. Plaintiff filed suit in this court on October 20, 1982.

## II.

■ Plaintiff attacks the decision of the FEAA on a number of grounds. The court notes at the outset that it may not overturn the administrative decision unless it is found to be arbitrary, capricious, unsupported by substantial evidence, or so grossly erroneous as to constitute bad faith. *See, e.g., Shapley v. United States,* 214 Ct.Cl. 783, 786, 566 F.2d 1188 (1977), and cases there cited. Each of plaintiff's arguments will be reviewed according to this standard.

### A. *Staleness of Charges.*

Plaintiff argues that the agency's decision to remove him in 1978 for offenses the most recent of which had been committed five years before in 1973, did not promote the efficiency of the service. The FEAA decision is said to be in error because it

violated a requirement for timely action which plaintiff finds in 5 U.S.C. § 7501(b)(4) (1976), and because it failed to consider delay as a mitigating factor, as he argues is required by *Power v. United States,* 209 Ct.Cl. 126, 133, 531 F.2d 505, 509 (1976).

Much of the delay plaintiff complains of in this case resulted from an earlier attempt by DODDS to remove him based upon essentially the same grounds charged in the present action. That earlier removal, which occurred in May, 1975, was later reversed on appeal to the FEAA on procedural grounds. The FEAA decision, issued July 20, 1976, did not reach the merits. The agency petitioned the Appeals Review Board of the Civil Service Commission to reopen and reconsider the FEAA decision, which, on December 1, 1977, the Review Board declined to do. The agency commenced the second removal action in May 1978.

■ Contrary to plaintiff's view, the statute, 5 U.S.C. § 7501(b)(4), does not afford a basis for overturning the decision below. The section relied upon requires the removing agency to proceed to a decision in timely fashion after receiving the employee's reply to the charges:

(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

(1) notice of the action sought and of any charges preferred against him;

(2) a copy of the charges;

(3) a reasonable time for filing a written answer to the charges, with affidavits; and

(4) a written decision on the answer at the earliest practicable date.

Read in its proper context, the statute simply does not apply to delays occasioned by appeal of the agency's decision to remove.

---

1. The Civil Service Reform Act, Pub.L. 95–454, 92 Stat. 1111 (1978), became effective January 1, 1979. Under the Act, the Civil Service Commission was reorganized, with the result that the FEAA ceased to exist and the Merit Systems

Protection Board (MSPB) assumed most of its functions. Since plaintiff's removal was effected under pre-Civil Service Reform Act law, this opinion will refer to the decision below as that of the FEAA.

Plaintiff additionally contends that the FEAA decision failed to give proper consideration to the delay in violation of *Power v. United States, supra.* This contention is similarly without merit. First of all, the court in *Power* did not hold that the Civil Service Commission's failure to consider the agency's delay warranted reversal, without more. Rather, the court stressed that on the unique facts of that case—the charges were minor, the penalty (removal) was severe, *and* the agency had delayed— the Commission had abused its discretion. *See Power,* 209 Ct.Cl. at 134–35, 531 F.2d at 509–10. Second, in this case, the appeals officer gave express consideration to plaintiff's argument that his removal was improperly delayed, but rejected that argument. *See Nicholas Speros,* Decision No. DC752B00038, slip op. at 5–6 (Merit Systems Protection Board May 8, 1980).

■ The appeals officer stated that the delay in securing plaintiff's removal was not fatal to the action because plaintiff had not demonstrated that he was prejudiced by the delay. This was a proper formulation of the legal standard under the precedents of this court. In *Cohen v. United States,* 177 Ct.Cl. 599, 369 F.2d 976 (1966), *cert. denied,* 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967), the court held that as to "the delay which * * * plaintiffs encountered with respect to their hearings * * *, suffice it to say that, absent any demonstrable prejudice resulting therefrom, no material procedural error may be found." *Id.* 177 Ct.Cl. at 619, 369 F.2d at 988; *accord Hart v. United States,* 204 Ct.Cl. 925, 498 F.2d 1405, *cert. denied,* 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 643 (1974).

For the reasons stated, the FEAA decision with regard to delay is neither arbitrary nor capricious.

B. *Personal Animus of the Proposing Official.*

■ Plaintiff argues that his removal did not promote the efficiency of the service because the official who proposed his removal, the superintendent, Mr. Search, did so out of personal malice against plaintiff. It is well settled that Government officials

are entitled to a presumption that they have acted in good faith and according to law and regulation. *See, e.g., Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–02 (1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977). Moreover, both Mr. Search and his assistant, Mr. Hamara (upon whose allegedly malicious motivations much of plaintiff's evidence at the hearing centered), testified under oath that they were not motivated by personal animosity against plaintiff in proposing his removal.

Plaintiff points to evidence in the record that some DODDS personnel had formed the opinion that Mr. Hamara was "out to get" him. From this evidence, plaintiff would have the court draw the inference that Mr. Hamara's alleged malice infected Mr. Search's decision to propose plaintiff's removal. However, this argument is peculiarly fact sensitive, depending almost entirely upon the credibility of the witnesses, as assessed by the appeals officer. Having had the opportunity to observe the demeanor of the witness, she concluded: "Nothing in the demeanor of Mr. Search or in any documentation in the file persuades me that, in proposing this action, he was under the control of Mr. Hamara or that he himself had a vendetta against the appellant [plaintiff here]." *Nicholas Speros,* Decision No. DC752B00038, slip op. at 3. It is not the function of this court to redetermine matters of credibility.

■ The appeals officer's conclusion that the removal action was not proposed for improper motives is supported by substantial evidence. Therefore the court need not consider plaintiff's argument that personal animus on the part of the proposing official would warrant a reduction of the penalty imposed.

C. *Failure of Deciding Official to Fully Consider Plaintiff's Reply.*

■ Plaintiff argues that his removal was procedurally defective because the deciding official, Dr. Cardinale, failed to give proper consideration to plaintiff's oral re-

ply. The alleged defect is Dr. Cardinale's failure to interview certain witnesses to whom he was referred by plaintiff. The view that the oral reply procedure accords plaintiff the right to present live testimony, other than his own, is erroneous.

The relevant regulation, 5 C.F.R. § 752.-202(b) (1978), provides:

> The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses. * * *

This language makes clear that Dr. Cardinale did not err by rendering his decision without consulting plaintiff's witnesses.

■ Nor does *Ricucci v. United States*, 192 Ct.Cl. 1, 425 F.2d 1252 (1970), which plaintiff relies upon to demonstrate that his oral reply was defective, demand a different answer. *Ricucci* requires the oral reply to encompass a general give and take discussion with an official whose recommendation would be meaningful. *Id.* at 7–8, 425 F.2d at 1255–56. Plaintiff's oral reply afforded him the protections envisioned by *Ricucci*. Therefore, the appeals officer's conclusion that Dr. Cardinale's failure to personally interview witnesses was not fatally defective to the removal decision was neither arbitrary nor capricious and was supported by substantial evidence.

### D. *Reliance on Charges Not Specified in Notice of Proposed Removal.*

Plaintiff argues that his removal was improper because the notice of proposed removal, issued May 3, 1978, did not include all the reasons for the action, in violation of 5 C.F.R. 752.202(a)(1) (1978). In support of this allegation, plaintiff points out that an index relating various documents in the record to the charges they allegedly support makes reference to two charges not specified in the notice of proposed removal. The additional charges originated with the first removal action,

commenced against plaintiff in 1975, but were not cited as reasons for his proposed removal in the 1978 action.

To support his view that the deciding official based the removal decision on the charges that were not contained in the notice of proposed removal, plaintiff argues that he was entitled to have the appeals officer draw a negative inference from Dr. Cardinale's failure to testify at the FEAA hearing. Specifically, the argument is that the appeals officer was required to infer that Dr. Cardinale relied upon the extraneous charges in deciding to remove plaintiff.

The applicable regulation, 5 C.F.R. § 772.307(c)(2) (1978) provides:

> If the appeals officer deems the reasons [for the witness' failure to appear] inadequate, and further determines that the requested witness is likely to possess special or peculiar knowledge about the matters in dispute, the appeals officer, may, in assessing the totality of evidence in the case, infer that the absent witness would have given testimony unfavorable to the employing agency. * * *

In her decision in this case, the appeals officer determined that a negative inference was appropriate under the quoted regulation. The court has some doubt whether the regulation can properly be applied to invoke an inference of error on the part of a decisionmaker, rather than to establish or negate historical facts. However, assuming the regulation's applicability, the appeals officer's decision does not run afoul of it.

■ Relying upon the negative inference drawn from Dr. Cardinale's absence as a witness, the decision below conceded that he was aware of the disputed document and its content, but went on to conclude that the index had not contributed to the removal decision in any way. This conclusion is supported by substantial evidence. In his decision letter, Dr. Cardinale stated: "I have made an extensive, impartial review of the reasons, and the supporting documentation, in the advance notice." This language supports the view that Dr.

Cardinale confined his decision to the charges specified in the notice of proposed removal.

Moreover, plaintiff was given a copy of the document in question at his oral reply, on August 28, 1978. This was well in advance of the removal decision, which was dated October 16, 1978. And in fact plaintiff had the benefit of six written replies—two authored by his attorney and four by himself—between the time of the oral reply and the decision. There was ample opportunity for plaintiff to respond to the additional charges to the extent he deemed necessary. In short, there is no factual basis upon which to conclude that plaintiff was removed for charges of which he was not informed.

E. *Standard of Proof.*

Plaintiff argues that the appeals officer applied an incorrect standard of proof in assessing the evidence against him at the hearing. The appeals officer's decision explicitly relies upon the "preponderance of the evidence" standard in finding that the charges against plaintiff were sustained. However, plaintiff reads the former Court of Claims decision in *Urbina v. United States*, 180 Ct.Cl. 194 (1967), to require a higher standard of proof—namely "clear and convincing evidence"—in cases involving charges of fraud, as this case does.

The question is not a simple one to resolve, because while there is language in *Urbina* and in *Wise v. United States*, 221 Ct.Cl. 105, 603 F.2d 182 (1979), suggesting that the standard of proof in false claim cases ought to be clear and convincing, there are other cases which appear to accept the preponderance of the evidence standard. After close study of the cases, the court has concluded that the Court of Claims precedents establish preponderance of the evidence as the appropriate standard.

The court's analysis begins with the point that the discussion of the clear and convincing standard in *Urbina* was not necessary to the result in that case, and therefore must be regarded as dicta. This read-

ing is reinforced by the Court of Claims opinion in *Kowal v. United States*, 188 Ct.Cl. 631, 412 F.2d 867 (1969), which explicitly leaves open the question of what standard of proof should apply in false claim cases. *Id.* at 643 n. 10, 412 F.2d at 874 n. 10.

More recently, in *Tucker v. United States*, 224 Ct.Cl. 266, 624 F.2d 1029 (1980), a civilian pay case in which the employee had been charged with falsifying travel vouchers, the Court of Claims upheld the FEAA decision, which had relied on the preponderance of the evidence standard. *Id.* at 272, 624 F.2d at 1032; *see also Schaefer v. United States*, 224 Ct.Cl. 541, 546, 633 F.2d 945, 947 (1980). Although the court accepted the preponderance standard without discussion in these cases, they nevertheless represent precedents which this court is bound to follow.

For these reasons, the appeals officer's reliance on the preponderance of the evidence standard in sustaining the charges against plaintiff did not constitute legal error.

F. *Failure of Removal to Promote Efficiency.*

The thrust of plaintiff's final argument is two-fold. First, the argument is made that the appeals officer's decision did not establish that plaintiff's removal would promote the efficiency of the service. Second, plaintiff contends that the appeals officer failed to consider whether mitigation of the penalty was appropriate, in violation of *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981). Both contentions are without merit.

As to the question of whether plaintiff's removal promoted the efficiency of the service, this court's predecessor has held that where a rational basis for the conclusion that a given penalty promotes the efficiency of the service is demonstrated, the decision below will be upheld. *See Tucker v. United States*, 224 Ct.Cl. at 274, 624 F.2d at 1033–34. The appeals officer's

decision in this case concluded, "[T]he trust that must exist in an employee-employer relationship has been so irreparably breached that the efficiency of the service would be promoted by his removal." *Nicholas Speros,* Decision No. DC752B00038, slip op. at 10. This statement clearly demonstrates a rational basis for the conclusion reached.

In the court's view, the language just quoted also demonstrates that the appeals officer did give consideration to the propriety of mitigating the penalty, but ultimately concluded that removal was warranted. Plaintiff's quarrel with the decision below seems to be that the mitigating factors enumerated in *Douglas v. Veterans Administration, supra,* were not explicitly analyzed. However, the Court of Appeals for the Federal Circuit has recently held that where the decision under review considers factors that are relevant to mitigation on the facts of the particular case, *Douglas* has been satisfied. *Nagel v. Department of Health and Human Services,* 707 F.2d 1384, 1386 (Fed.Cir.1983).

 In the decision below, the appeals officer explicitly considered factors which plaintiff argues are relevant to mitigation, namely his satisfactory performance after reinstatement, the notoriety of his case, the alleged malice of his supervisors, and the agency's delay in bringing the second removal action. The decision demonstrates to the court's satisfaction that the appeals officer weighed these factors, but considered them insufficient to overcome the seriousness of the offenses. Therefore, her decision that removal was an appropriate penalty in plaintiff's case and that his removal promoted the efficiency of the service was neither arbitrary nor capricious.

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the complaint shall be dismissed.