**Anthony C. AUTERA**

v.

**The UNITED STATES.**

**No. 344–65.**

United States Court of Claims.

Jan. 19, 1968.

As Amended Feb. 2, 1968.

Carl L. Shipley, Washington, D. C., attorney of record, for plaintiff, Rufus W. Peckham, Jr., Washington, D. C., and Samuel Resnicoff, New York City, of counsel.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57 (a). The commissioner has done so in an opinion and report filed on September 19, 1967. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the Rules of the court has expired. On November 13, 1967, defendant filed a motion that the court adopt the report. Since the court agrees with the commissioner's findings, opinion, and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

BERNHARDT, *Commissioner:*

On January 27, 1967, the court entered an order dismissing without prejudice the parties' cross-motions for summary judgment and remanded the case to the commissioner for trial on the two fact issues of whether or not (1) plaintiff was coerced into resigning from his position, and (2) plaintiff was certified on a most nearly appropriate Civil Service register by the Civil Service Commission. Trial on these issues produces a negative result as to each.

Plaintiff, a five-point veterans' preference eligible, seeks judgment for back-pay from the date of his separation from civilian Government employment, alleging that his rights under both the Lloyd-LaFollette Act, 37 Stat. 555, as amended, 62 Stat. 354 (1948), 5 U.S.C. § 652 (1964 ed.), and the Veterans' Preference Act of 1944, 58 Stat. 387, as amended, 61 Stat. 723 (1947), 5 U.S.C. § 863 (1964 ed.), as well as his rights under Civil Service Regulations, have been violated.

■ Two grounds are implicit: (1) The failure and refusal of the Securities and Exchange Commission (SEC) to convert his appointment in the classified service from temporary to probationary after his name had been certified by the Civil Service Commission (CSC) constituted breach of an express condition in his offer of appointment in addition to violating 5 C.F.R. § 2.302 (1961 ed.),[1] and (2) the coercive character of his resignation from SEC constituted in effect an unlawful discharge.[2]

On August 4, 1961, the Securities and Exchange Commission offered plaintiff an appointment as financial analyst, GS-1160-9, at $6,435 annually, "on a temporary basis pending your name being certified by the Civil Service Commission". On August 21, 1961, plaintiff assumed his duties with SEC as a financial analyst in the Division of Corporate Regulation. On August 24, 1961, pursuant to plaintiff's earlier application and unassembled examination, his name was entered on the Civil Service Commission register of eligibles for U-255 Economist (Business), GS-9. Plaintiff proved to be a willing but incompetent financial analyst in the view of his superiors. On June 8, 1962, he was informed that his work had been disappointing because he

---

1. 5 C.F.R. § 2.302 provides as to temporary appointments pending establishment of a register:

   "When there are insufficient eligibles on a register appropriate for filling a vacancy in a continuing position (one that will last longer than a year) and the public interest requires that the vacancy be filled before eligibles can be certified, the Commission may authorize the agency to fill the vacancy by temporary appointment pending establishment of a register. Such appointment shall continue only for such period as may be necessary to make appointment through certification."

2. Where a resignation has been coerced the consequent separation of a Civil Service employee constitutes an illegal discharge. Dabney v. Freeman, 123 U.S. App.D.C. 166, 358 F.2d 533, 534, 535 (D.C.Cir.1965); Paroczay v. Hodges, 111 U.S.App.D.C. 362, 297 F.2d 439, 441, n. 4 (1961).

did not seem to understand the nature of the work assignments given him and required too much supervision. He was told that unless he showed substantial improvement he would not be recommended for promotion, and was advised to consider looking elsewhere for a job. He admitted having difficulty in grasping the nature of his work assignments and hoped to improve.

■■■■■ He did not improve. On or about July 25, 1962, plaintiff was again called to a conference with his superiors. They told him that he had not demonstrated the competence required for his position, and gave him the choice of either having his temporary appointment terminated, or to resign voluntarily, in which latter case he would be given an opportunity to seek other employment on Government time. After reflecting a day or two the plaintiff, under date of July 27, 1962, tendered his resignation effective September 28, 1962, assigning as reason: "To seek a position with better advancement possibilities." The resignation was accepted to be effective September 28, 1962. Plaintiff tried unsuccessfully to obtain other Government employment in the interim. He contends that his resignation was coerced. It is the prevailing view as announced in Rich v. Mitchell, 106 U.S.App.D.C. 343, 273 F.2d 78 (1959), cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52, and Popham v. United States, 151 Ct.Cl. 502, 506 (1960), that an agency official does not act illegally or improperly in telling an employee he can choose between separation and resignation, unless the plaintiff alleges and proves that the official knew or believed that the proposed reasons for the proposed separation could not be substantiated. In the case under consideration the plaintiff, if he in fact enjoyed only temporary status, had no discharge rights whatsoever.[3] In giving plaintiff an option to resign and opportunity prior to the effective date of the resignation to look around for other employment, the plaintiff's superiors were humanely exceeding requirements rather than threatening action which they had no authority to take. Dabney v. Freeman, supra, n. 2, and Paroczay v. Hodges, 219 F.Supp. 89 (D.D.C.1963), and n. 2, supra, cited by plaintiff, do not aid him. In Dabney v. Freeman the court sustained the conclusion of the Civil Service Commission that plaintiff's resignation was not coerced, according great weight to the Commission's finding to that effect as the trier of the fact, and applying a standard of substantial evidence in reviewing and sustaining the agency's finding.[4] In Paroczay v. Hodges not only was the employee coerced into resigning by not being given time to decide whether to resign or to face immediate charges, but also the act of resignation deprived him of certain procedural rights under the Veterans' Preference Act, such as the right to respond on the merits to charges made against him. In the present case the plaintiff was given a day or two to make up his mind whether to resign, and furthermore by resigning he was waiving no procedural rights, since he had none.

■■■■■ The remaining question is whether the plaintiff was certified by the CSC on a most nearly appropriate Civil Service register. Findings 7 through 13 explore this issue, reaching

---

3. 5 C.F.R. 9.104(a) (1961 ed.), which entitled the TAPER employee to a written notice of separation was deleted effective February 10, 1961 (26 Fed.Reg. 18). Effective November 17, 1963, Section 2–2(3) of 316–5 Federal Personnel Manual provided for separation of TAPER employees on written notice. Between the two dates of February 10, 1961, and November 17, 1963, there was no Civil Service Regulation or Federal Personnel Manual instruction requiring that a TAPER be given a notice in writing that he was to be separated or that gave him any "discharge rights" if he was separated.

4. The present plaintiff apparently took no action administratively until February 26, 1965, when he filed a request with SEC. Losing there he appealed to the CSC, and on April 19, 1965 the CSC ruled that it had no jurisdiction to adjudicate his appeal.

the conclusion that the U–255 economist register of the CSC on which plaintiff's name was certified as an eligible was not the most nearly appropriate register for his appointment on a career-conditional basis to the position of SEC financial analyst, GS–9, thus ratifying the administrative holding. The condition in plaintiff's offer of employment by SEC that it would be "on a temporary basis pending your name being certified by the Civil Service Commission" meant a certification by the CSC that the plaintiff was on a register of eligibles most nearly appropriate to that of SEC financial analyst. Throughout the Government there was no extant register of eligibles which was appropriate to provide candidates for the position of SEC financial analyst, because that position had unique requirements. Plaintiff's certification by CSC on a register of eligibles for economist, GS–9, did not suffice the requirements of the SEC financial analyst position. Since at the time of plaintiff's appointment in 1961 the register of eligibles for SEC financial analyst had been long since exhausted, and SEC elected not to announce a new examination for that position so as to establish a new register of eligibles, the plaintiff could only have been hired on a temporary basis as a financial analyst, as he was.

Just as the court has refused to determine and pass on the qualifications of an employee for any given post as decided by the CSC, in the absence of a showing that there has been some substantial departure from applicable procedures, a misconstruction of governing legislation, or some error going to the heart of the determination, it should not undertake to second-guess the CSC in determining whether a person eligible for career appointment as an economist, or financial economist (finding 12), is also eligible as a SEC financial analyst with duties strictly limited to responsibility for the administration and enforcement of the regulatory provisions of the Investment Company Act of 1940. Cf. Barger v. United States, 170 Ct.Cl. 207 (1965).